James P. Frantz, Esq. (SBN 87492)
jpf@frantzlawgroup.com
William B. Shinoff, Esq. (SBN 280020)
wshinoff@frantzlawgroup.com
FRANTZ LAW GROUP, APLC
402 West Broadway, Suite 860
San Diego, CA 92101
Telephone: (619) 233-5945
Fax: (619) 525-7672

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEMPHIS-SHELBY COUNTY SCHOOLS,<br><br>Plaintiff,<br>v.<br><br>POWERSCHOOL HOLDINGS, INC.,<br><br>Defendant. | Case No.: **'25 CV 1153 BEN MSB**<br><br>**COMPLAINT FOR:**<br><br>**(1) Breach of Contract;**<br>**(2) Unjust Enrichment;**<br>**(3) Negligence;**<br>**(4) Negligence Per Se;**<br>**(5) Violations of California's Unfair Competition Law;**<br>**(6) False Advertising in Violation of 15 U.S.C. § 1125(a);**<br>**(7) Express Indemnity;**<br>**(8) Violations of the Tennessee Consumer Protection Act of 1977.**<br><br>**DEMAND FOR JURY TRIAL** |

1

COMPLAINT

Plaintiff Memphis-Shelby County Schools ("Plaintiff") brings this action against PowerSchool Holdings, Inc. ("Defendant" or "PowerSchool") and alleges as follows:

## I.    SUMMARY OF THE CASE

1.    Defendant PowerSchool is a leading provider of cloud-based software for K-12 education in the U.S. PowerSchool collects and maintains highly sensitive personal identifiable information ("PII") for more than 60 million students, parents, and school faculty worldwide. PowerSchool acquires the PII through its educational technology products that it sells to schools and school districts.

2.    The private information collected by PowerSchool includes names, addresses, dates of birth, phone numbers, email addresses, Social Security numbers, medical information, grades and grade point averages, bus stops for students, passwords for student portals, and other information that PowerSchool deems necessary to conduct its business.

3.    Plaintiff, a public entity that exists for the benefit of students, entered into a valid contract (the "Contract") with PowerSchool whereby PowerSchool agreed to collect, maintain, and secure the PII of students, parents, and faculty within Plaintiff's district.

4.    On or about December 28, 2024, PowerSchool became aware of a cybersecurity incident (the "Data Breach") involving the unauthorized exportation of personal information through its PowerSource customer support platform that occurred on or about December 20, 2024.

5.    According to PowerSchool, PowerSource contains a maintenance access tool that allows PowerSchool engineers to access Customer Student Information System instances for ongoing support and troubleshoot performance issues. Using the PowerSource tool, the attacker exported the PowerSchool students' and teachers' database tables to a .CSV file, which was then stolen.

6.    The hackers who committed the Data Breach claimed to be in possession of the PII of 62.4 million students and 9.5 million teachers. This breach affected not only this school year's records but also school districts' historical records. To date, Plaintiff has confirmed that the Data Breach resulted in the compromise of data containing the personal information of at least 485,267 former and current students. Plaintiff has also confirmed that the Data Breach resulted in the compromise of data containing the private information of at least 23,903 members of Plaintiff's staff and faculty.

7.    PowerSchool did not begin to notify school districts about the Data Breach until January 7, 2025. Most if not all school districts were not aware of the Data Breach that resulted in the theft of students' and teachers' private information until they received notification from PowerSchool.

8.    PowerSchool still has not directly communicated with many of the victims of the Data Breach to notify them of the attack, and PowerSchool has not informed the victims about what PII was stolen.

9.    In collecting and maintaining this PII, PowerSchool agreed in contracts with school districts that it would safeguard the data PowerSchool collected in accordance with internal policies, state law, and federal law.

10.    Since 2013, Plaintiff has paid PowerSchool over $21,000,000 to provide services for the more than 100,000 students in Plaintiff's district in any given school year. Plaintiff reasonably relied on PowerSchool's various representations about the steps PowerSchool was taking to ensure the data containing the private information of students, parents, and faculty was secure.

11.    PowerSchool's own website touted its products as a solution to protect student information, stating: "PowerSchool invests in updated security technology and adheres to strict security regulations. To keep your data secure." PowerSchool bolstered its platform's security reputation by claiming that it was an "industry leader for protected private data." On its website, PowerSchool assures

parents that they can "trust" PowerSchool to safeguard and protect their children's personal information.

12.    Despite these affirmations, promises, and contractual undertakings, PowerSchool did not uphold its end of the bargain. PowerSchool eventually acknowledged that it paid a ransom to the hackers and has stated that the hackers promised not to use the information obtained through the Data Breach.

13.    As a result of the misconduct alleged herein, PowerSchool breached numerous contractual, statutory, and legal duties it owed to Plaintiff.

## II.    PARTIES

14.    Plaintiff is a public school district serving 110,057 students and is comprised of 222 schools spanning grades pre-kindergarten through high school, consisting of ninety-seven elementary schools, thirty-one middle schools, forty high schools, thirteen schools serving pre-kindergarten only, twelve schools serving grades pre-kindergarten through eight, ten schools serving grades kindergarten through eight, nine schools serving grades six through twelve, two schools serving grades pre-kindergarten through twelve, two schools serving grades kindergarten through twelve, one school serving grades five through eight, one school serving grades six through nine, one school serving grades eight through twelve, one school serving grades four through twelve, one school serving grades kindergarten through six, and one school serving grades kindergarten through four. Plaintiff is located in Shelby County, Tennessee, with a population of approximately 910,530 residents.

15.    Defendant PowerSchool is a Delaware corporation headquartered at 150 Parkshore Drive, Folsom, California 95630.

## III.    JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a), as there is complete diversity between the Parties and the amount in controversy exceeds $75,000. This Court also has jurisdiction

over this proceeding under 28 U.S.C. §§ 1331 and 1367(a), as this Complaint asserts a claim arising under the laws of the United States and the remaining claims asserted by Plaintiff form part of the same case or controversy under Article III of the United States Constitution.

17.    This Court has personal jurisdiction over PowerSchool because PowerSchool conducts substantial business and has minimum contacts with the State of California.

18.    Venue is proper in this Court under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

**IV.    TAG-ALONG ACTION**

19.    This is a potential tag-along action and in accordance with 28 U.S.C. § 1407, it should be consolidated for inclusion in *In re: PowerSchool Holdings, Inc. and PowerSchool Group, LLC Customer Security Breach Litigation*, MDL 3149, Case No. 3:25-md-3149-BEN-MSB (Hon. Roger T. Benitez).

**V.    FACTUAL BACKGROUND**

20.    PowerSchool is the largest provider of cloud-based education software for K-12 education in the U.S., serving more than 75% of students in North America. PowerSchool's software is used by over 16,000 customers to support more than 50 million students in the United States. PowerSchool offers a full range of services to help school districts operate, including platforms for enrollment, communication, attendance, staff management, learning systems, analytics, and finance.

21.    PowerSchool receives and maintains PII for millions of students, parents, and school faculty across the country. Under state and federal law, PowerSchool had a duty to protect the PII of current and former students and school faculty members, including under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. It likewise had a duty to alert the

students, parents, and school faculty that their PII was accessed by an unauthorized third party, and to inform them about which PII had been stolen.

22.    PowerSchool maintains a website that contained a Global Privacy Statement. In this Statement, PowerSchool advertised to users that PowerSchool was "committed to protecting [users'] personal information" and that it "endeavors to align its privacy and security operations to best practices and relevant international regulations." This representation was one on which school districts, including Plaintiff, reasonably relied. As explained hereinafter, PowerSchool failed to live up to its promise.

### A. The Data Breach

23.    On or about December 28, 2024, hackers successfully breached Defendant's PowerSource customer support portal using a compromised credential, allowing the hackers to access Defendant's school student information system, PowerSchool SIS, which includes student records, grades, attendance, and enrollment. Hackers were able to access and steal this information by exporting the PowerSchool SIS 'Students' and 'Teachers' database tables to a .CSV file, which was then stolen.

24.    PowerSchool did not alert customers (mainly schools and school districts) until January 7, 2025, which was ten days after detecting the Data Breach. Even then, PowerSchool still has not alerted all school districts regarding the Data Breach.

25.    The hackers were able to access at least the following PII from PowerSchool, all of which PowerSchool represented it would protect:

      a. Names;

      b. Addresses;

      c. Social Security numbers;

      d. Phone numbers;

      e. Email addresses;

COMPLAINT

f.  Medical information;

g.  Grades and grade point averages;

h.  Bus stops for students;

i.  Passwords for student portals;

j.  Notes and alerts concerning students;

k.  Student IDs; and

l.  PII of parents or guardians of students.

26.     The hackers have exploited or will exploit the data obtained in the Data Breach for profit. The hackers would not have incurred the time and effort to breach PowerSchool's systems to access users' PII and risk significant criminal prosecution if the information was not valuable. It is likely that the PII of students and parents in Plaintiff's district has already been or will imminently be published and sold on the Dark Web.

**B. Failure to Adopt Reasonable Systems and Protections**

27.     PowerSchool did not adopt reasonable data systems and protections to safeguard the PII of students and faculty, prevent and detect unauthorized access to this data, or identify users impacted by the Data Breach.

28.     Central to the nature of its business, PowerSchool collects highly personal data for tens of millions of students, parents, and school faculty. It generates hundreds of millions of dollars annually through the collection, storage, and use of this information. PowerSchool therefore had ample resources and a strong motive to adopt reasonable protections. PowerSchool also knew that such protections were necessary given the highly personal nature and value of the information it stores.

29.     PowerSchool knew or should have known that it would be the target of hackers. Similar education technology providers had been subject to data breaches in previous years. More recently, PowerSchool informed the FBI that it was subject to a campaign to obtain PowerSchool's data.

COMPLAINT

30.    On information and belief, PowerSchool failed to:

 a. adequately train its employees on cybersecurity protocols;

 b. implement reasonable security measures to prevent data breaches;

 c. implement reasonable security measures to detect data breaches;

 d. implement reasonable security measures to comprehend the scope of data breaches; and

 e. implement reasonable security measures to timely determine who was impacted by data breaches.

31.    Following the Data Breach, PowerSchool has indicated that it is attempting to adopt and implement reasonable data systems and procedures. As it explained following the Data Breach, PowerSchool is now "Securing the Portal" that was used to access the data and "Strengthening Security" for its systems. But these measures are too late for Plaintiff, who had entered into the Contract with PowerSchool with the understanding that these measures were already adequately implemented and maintained. PowerSchool should have implemented these reasonable measures before the Data Breach.

32.    PowerSchool has done little to help either Plaintiff or the students, parents, and faculty who were affected by the Data Breach. PowerSchool appears to have offered credit monitoring services to only some of the victims. PowerSchool has not adequately compensated Plaintiff and the victims of the Data Breach for the injuries sustained to date. At most, PowerSchool has indicated it will provide only limited protections moving forward.

### C. Failure to Fulfill Express and Implied Promises

33.    Plaintiff and PowerSchool are parties to the Contract, the terms of which include express and implied promises that create mandatory obligations on the part of PowerSchool.

34.    The Contract included a Data Privacy Agreement ("DPA"). The DPA expressly obligated PowerSchool to do all of the following:

a. utilize commercially reasonable administrative, physical, and technical safeguards designed to protect Student Data from unauthorized access, disclosure, acquisition, destruction, use, or modification;

b. adhere to any applicable law relating to data security;

c. notify Plaintiff in the most expedient time possible and without unreasonable delay, but no later than five calendar days, after determining that a data breach occurred; and

d. comply with the data privacy protection standards set forth under the ISO 27000 series Cybersecurity Framework.

35.   Despite having represented it would do all the above, PowerSchool did not fulfill its promises. Plaintiff has accordingly been deprived of the full benefit of Plaintiff's bargain.

### D. Plaintiff's Injuries

36.   Plaintiff believed PowerSchool would use reasonable security protocols and procedures to protect the PII of Plaintiff's employees, faculty, students, and parents of students. At a minimum, Plaintiff reasonably believed that PowerSchool would implement practices and procedures that were consistent with its stated privacy policies, the Contract between Plaintiff and PowerSchool, and state and federal law.

37.   A cornerstone of the commercial relationship between Plaintiff and PowerSchool was Plaintiff's reliance on PowerSchool's representation that it would adequately protect the PII of students and employees who Plaintiff serves. PowerSchool, therefore, has a continuing contractual and legal duty to protect the data from unauthorized access and disclosure.

38.   Information that Plaintiff has obtained through investigation that is specific to Plaintiff's district has revealed the unprecedented scale of theft that was accomplished through the Data Breach. The Data Breach resulted in the

unauthorized access and disclosure of private information of 485,267 former and present students in Plaintiff's district. This includes but is not limited to students' names, street addresses, birthdays, and identification numbers.

39.    In addition to this private information, the Data Breach resulted in the unauthorized access and disclosure of the Social Security numbers of at least 449,471 former and present students in Plaintiff's district.

40.    The compromised data also contained private medical information that is protected under the Health Insurance Portability and Accountability Act ("HIPAA"). Plaintiff has learned that the Data Breach resulted in the unauthorized access and disclosure of the private medical information of at least 66,28 former and present students.

41.    Despite the massive scale of persons affected by the Data Breach, PowerSchool has done little to help Plaintiff or the individuals whose PII was stolen. The Contract exists for the benefit of Plaintiff and, by extension, those who Plaintiff serves within Plaintiff's district who were affected by the Data Breach.

42.    PowerSchool has failed to provide an explanation for how it will employ any reasonably adequate method by which to notify the hundreds of thousands of individuals affected by the Data Breach. PowerSchool has instead made it Plaintiff's responsibility to notify these individuals, even though Plaintiff is an entity reliant on public funding and has paid PowerSchool tens of millions of dollars over the last twelve years.

43.    Plaintiff has spent and will continue to spend time and effort monitoring the comprised data containing PII and addressing issues caused by the Data Breach. To address the ongoing issues caused by the Data Breach, Plaintiff must now bear the tangible burdens of informing those affected about credit monitoring, identifying data protection services, and staying updated by continuing to remain adequately informed about ongoing new information regarding the details of the Data Breach and its implications for affected persons

COMPLAINT

in Plaintiff's district. This will involve persistently communicating with the individual victims of the Data Breach to ensure that there is sufficient information available to Plaintiff's faculty members, students, and the parents and guardians of those students. Plaintiff serves the individual victims who now fear for the security of their PII and worry about information that was exposed, a problem created by PowerSchool despite its various representations about prioritizing data security.

44. Plaintiff has a continuing interest in ensuring that the PII—which appears to remain in Defendant's possession—will be secure from any future hacking attempts.

45. Plaintiff has suffered or will suffer significant economic injuries as the result of the Data Breach. These economic injuries include or will include at least the following:

    a. Out-of-pocket costs for the past and future expenses associated with handling the Data Breach, including additional wages paid to Plaintiff's staff members;

    b. Expert expenses that will be necessary for Plaintiff to understand the precise nature of the potential consequences that Plaintiff's students and employees must contend with;

    c. Legal expenses to understand what, if any, legal liability Plaintiff may now face as the direct result of Defendant's failure to secure the data as promised; and

    d. Future expenses that Plaintiff will need to incur so that Plaintiff can change platforms and migrate all of the data to a new vendor.

46. Plaintiff has also suffered lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, inter alia, preventing, detecting, contesting, and recovering from identify theft and fraud.

47. Plaintiff must now spend significant time and resources to assist

COMPLAINT

victims of the Data Breach. According to the Department of Justice's Bureau of Justice Statistics ("BJS"), nearly one-third of "victims who had personal information used for fraudulent purposes . . . spent a month or more resolving problems." In fact, for some victims, the BJS found that it took more than a year for them to resolve these issues.

48.     Compounding these problems, the true scale of the fraudulent activity stemming from the Data Breach may not come to light for several years. Therefore, Plaintiff will have to incur these costs over the course of years during which the individual victims will face constant surveillance of their financial and personal records.

49.     Plaintiff entered into the Contract with PowerSchool with the expectation that PowerSchool's performance would be at least commensurate with industry standards. As a result of PowerSchool's failure to adopt these standards, Plaintiff was deprived of the full benefit of the bargain under the Contract.

50.     Plaintiff's payments to PowerSchool were expressly made contingent upon PowerSchool's adoption and implementation of reasonable data security measures. Plaintiff therefore conferred a benefit on PowerSchool which PowerSchool retained with the knowledge that it was not providing the services it promised to perform under the Contract. PowerSchool was accordingly unjustly enriched at Plaintiff's expense.

### E. PowerSchool Did not Follow FTC Guidelines or Industry Standards

51.     According to guidance from the FTC, businesses that collect consumer data should factor in the need for adequate data security to all business decision-making. The FTC has also provided guidance that identifies practices to guide companies like PowerSchool in protecting themselves against a data breach, i.e., established industry standards for adequate protection against data incidents.

52.     As part of its 2016 guidelines, the FTC explained that, in order to adequately protect user data, a company should, among other things:

a.  encrypt information stored on computer networks;

b.  understand its network's vulnerabilities;

c.  implement policies to correct security problems;

d.  have response plans in place to ensure an adequate and timely response to a data breach;

e.  require complex passwords to navigate internal systems;

f.  use industry-tested security methods;

g.  have monitoring systems in place to detect suspicious activity; and

h.  verify that third-party service providers have reasonable security systems in place.

53.    Companies that fail to employ reasonable security systems and procedures may face an enforcement action from the FTC, as it often interprets such failures as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

54.    Several practices have been established that provide baseline industry standards for businesses. These practices include:

a.  educating all employees;

b.  strong passwords;

c.  multi-layer security, including firewalls, anti-virus, and anti-malware software;

d.  encryption (making data unreadable without a key);

e.  multi-factor authentication;

f.  backup data; and

g.  limiting which employees can access sensitive data.

55.    Other industry standard practices include:

a.  installing appropriate malware detection software;

b.  monitoring and limiting network ports;

c.  protecting web browsers and email management systems;

d.  setting up network systems such as firewalls, switches, and routers;

e.  monitoring and protection of physical security systems;

f.  protection against any possible communication system; and

g.  training staff regarding critical points.

56.  PowerSchool failed to implement several of these industry standards and best practices, which directly and proximately caused the Data Breach and resulted in injury to Plaintiff.

**F. Tolling**

57.  Any applicable statute of limitations has been tolled by PowerSchool's knowledge and concealment of the unlawful conduct and misrepresentations alleged herein. Plaintiff could not have discovered PowerSchool's unlawful conduct through reasonable diligence.

58.  PowerSchool knowingly, actively, affirmatively and/or negligently concealed the facts alleged herein. Plaintiff reasonably relied on PowerSchool's concealment.

**VI.     CLAIMS FOR RELIEF**

**COUNT 1**

**Breach of Contract**

59.  Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

60.  Plaintiff and PowerSchool are parties to the Contract which incorporates the Data Privacy Agreement.

61.  At all relevant times, Plaintiff fully performed its obligations under the Contract.

62.  In Article V, Section 3 of the DPA, PowerSchool agrees "to utilize commercially reasonable administrative, physical, and technical safeguards designed to protect Student Data from unauthorized access, disclosure, acquisition, destruction, use, or modification."

63.    PowerSchool failed to perform its obligations under Article V, Section 3 of the DPA in that:

    a. PowerSchool failed to implement multi-factor authentication to protect against unauthorized access;

    b. PowerSchool stored sensitive student data without encryption at rest;

    c. PowerSchool maintained inadequate internal access controls within its PowerSource support tool, allowing unauthorized database access;

    d. The PowerSource tool that PowerSchool utilized lacked appropriate segmentation or isolation from core student information system databases;

    e. PowerSchool failed to maintain or activate a written incident response plan prior to or during the breach;

    f. PowerSchool failed to adequately train its employees on data security protocols and breach prevention;

    g. PowerSchool retained outdated and unnecessary student data, including historical records from prior school years, without applying data minimization or destruction protocols;

    h. PowerSchool failed to provide timely and direct notice of the Data Breach to affected students, parents, and faculty members;

    i. PowerSchool failed to conduct or document independent security audits or vulnerability assessments prior to the Breach; and

    j. PowerSchool only began implementing stronger security controls after the Data Breach occurred, indicating its prior safeguards were commercially unreasonable.

64.    Plaintiff reasonably believed that PowerSchool was utilizing commercially reasonable standards to protect students' data when the Contract was made and reasonably relied on PowerSchool's representation that it was doing so throughout the parties' contractual relationship. Plaintiff would not have

purchased PowerSchool's products and services if Plaintiff knew PowerSchool was in fact acting in a commercially unreasonable manner that would foreseeably allow for the unauthorized disclosure of students' PII that occurred in the Data Breach. Thus, PowerSchool materially breached the Contract through the failure to perform PowerSchool's obligations under Article 5, Section 3.

65.    PowerSchool also failed to perform under Article V, Section 3 of the DPA in that PowerSchool did not "adhere to applicable law relating to data security" as stated in this Section. In storing, collecting, and maintaining the data containing PII, PowerSchool violated:

    a. Section 5 of the FTC Act (15 U.S.C. § 45);

    b. HIPAA (45 C.F.R. § 164.530(c)(l)); and

    c. The Tennessee Data Accessibility, Transparency and Accountability Act (Tenn. Code Ann. § 49-1-701 et seq.).

66.    Plaintiff reasonably expected PowerSchool to comply with applicable state and federal laws and regulations that address storing, collecting, and protecting data containing the PII that Plaintiff entrusted to PowerSchool when the Contract was made. Plaintiff would not have entered into the Contract with PowerSchool if Plaintiff knew that PowerSchool was continuously operating its business in an unlawful manner, especially given the highly sensitive nature of the PII PowerSchool represented it would protect from disclosure.

67.    Also in Article V, Section 3 of the DPA, PowerSchool promises that its "Cybersecurity Framework is aligned with the nationally recognized standard selected in Exhibit 'F', subject to appropriate exclusions, variations, or exemptions as determined by [PowerSchool]." Incorporated in the DPA, Exhibit F states the following:

> The Education Security and Privacy Exchange ("Edspex") works in partnership with the Student Data Privacy Consortium and industry leaders to maintain a list of known and credible cybersecurity frameworks which can protect digital learning

ecosystems chosen based on a set of guiding cybersecurity principles* ("Cybersecurity Frameworks") that may be utilized by Provider.

68.   Following this statement, Exhibit F identifies the Cybersecurity Framework "Information technology - Security techniques - Information security management systems (ISO 27000 series)," published and maintained by the International Standards Organization, as the set of guiding cybersecurity principles that PowerSchool promises to utilize. In rendering services to Plaintiff pursuant to the Contract, PowerSchool failed to abide by numerous standards set forth in the ISO 27000 series, including:

   a.   Using data encryption to protect the confidentiality and integrity of private data;

   b.   Implementing secure authentication mechanisms such as multi-factor authentication;

   c.   Promptly detecting, reporting, and responding to incidents involving a security compromise;

   d.   Ensuring all employees receive appropriate security training;

   e.   Conducting regular risk assessments and reviews of data security measures; and

   f.   Aligning public claims and policy statements regarding data security with practices and procedures that are actually implemented.

69.   When the Contract was made, Plaintiff reasonably expected that PowerSchool would implement and maintain the ISO 27000 series standards in the interest of protecting the privacy of students, parents, and teachers. Plaintiff's agreement to pay PowerSchool all amounts due under the Contact and subsequent performance of that obligation was substantially based on PowerSchool's reciprocal promise to implement these standards, and Plaintiff reasonably believed that PowerSchool had done so and would continue to do so.

70.     Thus, the failure by PowerSchool to abide by ISO 27000 series standards was a material breach of the Contract.

71.     Article V, Section 4 of the DPA, entitled "Data Breach," states that in the event of a data breach, PowerSchool will notify Plaintiff "within the most expedient time possible and without unreasonable delay, but no later than five (5) calendar days after the determination that a breach has occurred."

72.     PowerSchool notified Plaintiff of the Data Breach at least ten days after learning that the Data Breach had occurred, an unreasonable delay that diminished, constrained, and limited Plaintiff's ability to learn who possessed the PII and which PII had been compromised.

73.     There has been no indication that notifying Plaintiff within five days of the time that PowerSchool became aware of the Data Breach would have disrupted investigation of the incident by law enforcement, as PowerSchool unilaterally investigated the Data Breach and paid the ransom to the cybercriminals involved in gaining unauthorized access to the data containing PII without assistance or input from law enforcement agencies or personnel.

74.     Plaintiff reasonably believed that PowerSchool would perform its obligation as it promised in the event of a breach of security to this highly sensitive data that was in PowerSchool's care, custody, and control pursuant to the Contract. PowerSchool's failure to do so has been to Plaintiff's detriment and deprived Plaintiff of the benefits of timely notification. These lost benefits and detriments include, but are not limited to:

    a. Missed opportunity to shut down unauthorized access or secure exposed systems sooner;

    b. Delay in alerting students, parents, and staff, leaving them vulnerable to identity theft or fraud;

    c. Critical evidence being lost or overwritten, making it more difficult to determine how the Data Breach occurred;

d.  Difficulty understanding what data was compromised, such as Social Security numbers, addresses, grades, or health records;

e.  Increased risk of non-compliance with data protection laws like FERPA or state data breach notification laws;

f.  Inability to activate internal response teams or involve law enforcement in a timely manner;

g.  Lack of control over messaging, damaging trust with parents, staff, and the community;

h.  Lost time to update passwords, secure systems, and educate users on phishing risks stemming from the Data Breach; and

i.  Higher costs for credit monitoring, legal support, and cybersecurity consulting due to expanded damage given the length of exposure.

75.    As such, Plaintiff has lost material benefits that Plaintiff reasonably believed Plaintiff would receive when Plaintiff entered into the Contract with PowerSchool. PowerSchool materially breached the Contract through its failure to perform in accordance with its notification obligations under the DPA.

76.    In light of this unreasonable delay in providing notification of the Data Breach, PowerSchool materially breached the Contract per the terms of Article V, Section 4 of the DPA.

77.    As a direct and proximate consequence of PowerSchool's breaches of the Contract identified herein, Plaintiff has suffered monetary and other damages. These include the additional out-of-pocket costs and expenses which flow directly from these material breaches, which Plaintiff has incurred for:

a.  Additional wages paid to staff members to address the breach;

b.  Increased workload on administrative staff for managing affected data and addressing concerns from parents, students, and faculty;

c.  Expenses for hiring cybersecurity experts to investigate the breach;

d.  Costs for cybersecurity experts to assess potential risks to students,

19

COMPLAINT

parents, and staff;

e. Fees for cybersecurity experts to provide recommendations on securing the school's data;

f. Legal consultation costs to determine potential liability;

g. Legal expenses to understand regulatory compliance obligations;

h. Legal fees to prepare for potential lawsuits from affected individuals;

i. Expenses to transition data from PowerSchool to a different, more secure platform;

j. Technical support costs associated with data transfer;

k. Costs for staff training on the new system;

l. Expenses for implementing improved security measures;

m. Lost opportunity costs from redirecting school staff to mitigate the breach's impact;

n. Wages lost due to time spent monitoring and responding to identity theft risks;

o. Costs for providing credit monitoring services to affected students, parents, and faculty;

p. Expenses for identity theft protection services for those impacted by the Data Breach;

q. Ongoing monitoring costs due to delayed or hidden fraudulent activity;

r. Future legal and expert consultation expenses to manage ongoing risks of PII exposure;

s. Expenses for drafting and sending notification letters/emails to affected individuals;

t. Costs for setting up support hotlines or response teams for inquiries; and

u. Administrative expenses for responding to concerns from students,

20

COMPLAINT

parents, and faculty about potential identity theft.

78.    All of these out-of-pocket losses were foreseeable to PowerSchool when the Contract was made given PowerSchool's familiarity with Plaintiff's status as a public entity and the nature of PowerSchool's business and clientele. These losses were and are unavoidable as they are a manifestation of the natural and probable consequences of the acts and omissions through which PowerSchool materially breached the Contract.

79.    In committing the acts and omissions that have directly and proximately caused Plaintiff's out-of-pocket losses, PowerSchool intentionally failed to perform acts which constitute PowerSchool's duties under the Contract. PowerSchool at all relevant times knew or had reason to know of the facts that would lead a reasonable, prudent person to realize that PowerSchool's conduct created an unreasonable risk of harm to Plaintiff and those whose PII Plaintiff entrusted to PowerSchool. PowerSchool's failure to perform its contractual duties showed a deliberate indifference to the harmful consequences to Plaintiff flowing directly from PowerSchool's conduct. Therefore, PowerSchool at all relevant times acted with gross negligence in breaching the Contract and causing Plaintiff's substantial monetary losses.

80.    As a direct and proximate result of PowerSchool's breaches of the Contract, Plaintiff was deprived of the full benefit of data security protection that was promised under the Contract. Plaintiff has still not received the benefit that Plaintiff bargained for insofar as PowerSchool has substantially failed to perform its contractual obligations in the aftermath of the Data Breach.

81.    Plaintiff is informed and believes that the monetary damages caused by PowerSchool's various breaches of the Contract will only continue to grow given the nature of the personal data involved and the resources that will be necessary to respond to the Data Breach. The total amount of these losses will be determined subject to proof of these damages at the time of trial.

82.    Based upon all of PowerSchool's various failures to perform obligations that amount to material breaches of the Contract, Plaintiff seeks to recover all available general damages, special damages, benefit-of-the-bargain damages, attorneys' fees and costs, and all other available damages sufficient to compensate Plaintiff for Plaintiff's injuries as allowable by law.

### COUNT 2

### Unjust Enrichment

83.    Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

84.    PowerSchool was the recipient of funds from Plaintiff that Plaintiff continuously expended under the reasonable belief that PowerSchool was providing the data security services it promised to provide under the Contract and as part of all prior transactions with PowerSchool which were consummated before the current Contract went into effect.

85.    PowerSchool received funds from Plaintiff with actual knowledge that PowerSchool had no legitimate claim to a substantial portion of the funds. At all relevant times, PowerSchool knew that Plaintiff was continuing to pay for services that PowerSchool was at no point providing.

86.    Despite this knowledge, PowerSchool maintained possession of the ill-gotten funds or otherwise used the funds for PowerSchool's own benefit.

87.    As a result of PowerSchool continuing to receive and use these funds with the knowledge that PowerSchool was actively failing to perform its obligations under the Contract, PowerSchool received and unjustly retained a benefit at Plaintiff's expense.

88.    Plaintiff, as a matter of law and in equity and good conscience, is therefore entitled to restitution from Defendant constituting the value of the unjustly retained funds in an amount to be proven at trial.

# COUNT 3

## Negligence

89.   Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

90.   Plaintiff entrusted the storage, retention, and maintenance of the PII belonging to students, parents, and faculty to PowerSchool based on the understanding that PowerSchool would take reasonable steps to safeguard the data containing this PII.

91.   PowerSchool owed a duty of care to Plaintiff concerning the care and custody of this PII because it was foreseeable that any failure by PowerSchool to adopt adequate security systems consistent with industry standards would substantially increase the risk that this PII would be accessed by cybercriminals in a data breach.

92.   As the nation's leading provider of cloud-based software for K-12 education, PowerSchool has full knowledge of the sensitivity of the PII at issue in this case and the harm that unauthorized access can cause to Plaintiff.

93.   PowerSchool owed these duties to Plaintiff because Plaintiff is a customer to whom PowerSchool markets, and because Plaintiff is a foreseeable and probable entity that PowerSchool knew or should have known would suffer injury in fact from PowerSchool's inadequate security practices.

94.   PowerSchool owed Plaintiff at least the following duties:

a.   to exercise reasonable care in handling and using the PII in its care and custody, which Plaintiff entrusted to PowerSchool;

b.   to implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized access; and

c.   to notify Plaintiff within a reasonable timeframe of any breach to the security of this PII.

COMPLAINT

95.     Therefore, PowerSchool owed a duty to timely and accurately disclose to Plaintiff the scope, nature, and occurrence of the Data Breach. Plaintiff needed PowerSchool to take appropriate measures to timely protect this PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

96.     PowerSchool also had a duty to exercise appropriate clearinghouse practices to remove PII when it was no longer necessary to retain under applicable regulations.

97.     PowerSchool knew or reasonably should have known that the failure to exercise due care in the collection, storage, and use of the PII involved an unreasonable risk of harm to Plaintiff and those who Plaintiff is tasked with protecting, even if the harm occurred through the criminal acts of a third party.

98.     PowerSchool's duty to use reasonable security measures arose because of the special relationship that existed between PowerSchool, on the one hand, and Plaintiff, on the other hand. That special relationship arose because Plaintiff entrusted PowerSchool with the confidential PII of its students and faculty members, which is a necessary part of Defendant's products and services.

99.     Under the FTC Act, 15 U.S.C. § 45, PowerSchool had a duty to use fair and adequate computer systems and data security practices to safeguard the PII.

100.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of PowerSchool's duty to protect this PII.

101.    PowerSchool violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with

applicable industry standards as described in detail herein. PowerSchool's conduct was particularly unreasonable given the nature and amount of PII that PowerSchool had collected and stored and the foreseeable consequences of a data breach, including, specifically, the damages that would result to individuals in the event of a breach, which ultimately came to pass.

102.   The risk that unauthorized persons would attempt to gain access to the PII at issue here made this Data Breach and Plaintiff's resulting injuries foreseeable. PowerSchool holds vast amounts of valuable data for students, parents, and school faculty. Similar education technology providers had been subject to data breaches in previous years. PowerSchool also alerted the FBI that it was the target of a data theft campaign in the period before the Data Breach. Therefore, it was inevitable that unauthorized individuals would attempt to access PowerSchool's databases—whether by malware or otherwise.

103.   The PII at issue is highly valuable, and PowerSchool knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII that Plaintiff entrusted to PowerSchool, and the importance of exercising reasonable care in handling it.

104.   PowerSchool improperly and inadequately safeguarded the PII in deviating from industry standards, regulations, and practices at the time of the Data Breach.

105.   PowerSchool breached these duties as evidenced by the Data Breach.

106.   PowerSchool acted with wanton and reckless disregard for the security and confidentiality of the PII by:

    a. enabling access to this information by third parties through negligent website design; and

    b. failing to properly supervise the manner in which the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

107.   PowerSchool breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the PII. This actually and proximately caused the Data Breach and Plaintiff's resulting injury.

108.   PowerSchool further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and the victims alike, which actually and proximately caused and exacerbated the harm from the Data Breach.

109.   PowerSchool has admitted that PII was wrongfully lost, accessed, and/or disclosed to unauthorized third persons because of the Data Breach.

110.   As a direct and proximate result of PowerSchool's negligence and/or negligent supervision, Plaintiff has suffered and will suffer damages, including monetary damages and an increased risk of future harm.

111.   PowerSchool's negligence and failure to exercise reasonable care directly and proximately caused Plaintiff to sustain actual, tangible, compensable damages. These damages include, inter alia, the additional expenses associated with handling the concerns of students and members who have suffered the theft of their PII by criminals, lost benefit of the bargain, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by PowerSchool's negligence. These damages are ongoing, imminent, immediate, and will continue to accrue.

## COUNT 4

## Negligence Per Se

### A. Federal Law

112.   Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

113.   Under the FTC Act, 15 U.S.C. § 45, PowerSchool had a duty to provide fair and adequate computer systems and data security practices to

COMPLAINT

safeguard the PII that Plaintiff entrusted to PowerSchool.

114.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, consumers' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect the PII of Plaintiff's students and faculty.

115.    Defendant breached its duties to Plaintiff under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

116.    Defendant's duty of care to use reasonable security measures arose out of the special relationship between Defendant and Plaintiff, a consumer of PowerSchool's products, which is recognized by laws and regulations including but not limited to the Health Insurance Portability and Accountability Act ("HIPAA") and common law. Defendant was able to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff from the Data Breach.

117.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). The healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

118.    Defendant's duty to use reasonable care in protecting confidential data arose out of both the statutes and regulations described above and industry standards applicable to the protection of PII.

119.   Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect the PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant collected and stored and the foreseeable consequences of a data breach.

120.   The harm resulting from the Data Breach is the type of harm the FTC Act is intended to protect against. The FTC has pursued numerous enforcement actions against businesses that caused the same harm as that suffered by Plaintiff due to the failure to use reasonable data security measures.

121.   Defendant violated its duty under HIPAA by failing to use reasonable measures to protect the health information of Plaintiff's students and faculty, which was disclosed in the Data Breach, and by not complying with applicable regulations.

122.   Plaintiff, as a school district, is a member of the class of persons that these statutes, regulations, orders, and/or standards seek to protect because Plaintiff is a public entity that must entrust businesses like that of Defendant with managing and storing private information so that Plaintiff is able to efficiently and effectively provide services to students and the public. Thus, Defendant owed Plaintiff a duty under these statutes, regulations, orders, and/or standards.

123.   Plaintiff would not have suffered the injuries alleged herein but for Defendant's wrongful and negligent breach of these duties owed to Plaintiff and those who Plaintiff is tasked with protecting.

124.   The injuries suffered by Plaintiff were the reasonably foreseeable result of Defendant's breach of Defendant's duties. Defendant knew or should have known that it was breaching its duties and that this breach would cause the injuries suffered by Plaintiff as alleged herein.

125.   If Plaintiff knew that Defendant did not adequately protect the PII, then Plaintiff would not have entrusted Defendant with this PII.

126. Defendant's various violations and its failure to comply with applicable laws and regulations constitute negligence per se.

127. As a direct and proximate result of Defendant's negligence per se, Plaintiff was injured, including through the loss of time spent attempting to mitigate the victims' harms and money resolving fraudulent charges; loss of time and money obtaining and furnishing to victims information about protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling Plaintiff to damages in an amount to be proven at trial.

128. Additionally, as a direct and proximate result of Defendant's negligence per se, Plaintiff has suffered and will suffer the continued risks of exposure to liability for the loss of students' and faculty members' PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant remains in breach of its duty to implement appropriate and adequate measures to protect this PII.

**B. State Law**

129. Tennessee law provides further evidence of the duties of care that PowerSchool owed to Plaintiff and Defendant's negligence per se.

130. PowerSchool is subject to the requirements of the Tennessee Data Accessibility, Transparency and Accountability Act ("DATAA"), as PowerSchool is an "operator" within the meaning of Tenn. Code Ann. § 49-1-702(11).

131. The PII of students that was compromised in the Data Breach is considered "covered information" as that term is defined under Tenn. Code Ann. § 49-1-702(3).

132. The DATAA required PowerSchool to "[i]mplement and maintain reasonable security procedures and practices appropriate to the nature of the covered information, designed to protect that covered information from unauthorized access, destruction, use, modification, or disclosure." Tenn. Code

Ann. § 49-1-708(c)(1).

133.   PowerSchool breached the duty PowerSchool owed under Tenn. Code Ann. § 49-1-708(c)(1) because:

a.   PowerSchool did not use multi-factor authentication, a basic and widely adopted industry standard;

b.   Sensitive data was not encrypted at rest, allowing it to be easily exported by attackers;

c.   PowerSchool lacked proactive breach detection policies, as the breach went undetected for several days; and

d.   PowerSchool's platform was using a vulnerable PowerSource support tool that allowed attackers to easily access and export entire student databases containing students' PII.

134.   The harms resulting from PowerSchool's breach of the duty it owed under the DATAA are the type of harms that the DATAA is intended to protect against. The Tennessee Legislature sought to protect the privacy of students and, by extension, to insulate Plaintiff from shouldering the costs of a third party operator's failure to properly store and protect data of these students.

135.    As a result of PowerSchool's breach of the duty it owed under the DATAA, Plaintiff has suffered injuries that the statute seeks to protect against. Plaintiff has suffered actual damages in the time and effort spent monitoring the PII of public school students and employees and has incurred out-of-pocket expenses as a direct and proximate consequence of the Data Breach, all of which have been made necessary as a response to the Data Breach. The Tennessee Legislature sought to ensure that these costs and expenses could be avoided in passing and implementing the DATAA.

136.   Plaintiff, as a school district, is a member of the class of persons that this statute seeks to protect because Plaintiff needed a business like PowerSchool to collect, store, and manage the private information of students to efficiently and

effectively provide services to students and the public without burdening Plaintiff with the costs and expenses necessary to protect and secure this private information. The Tennessee Legislature aimed to ensure that business entities acted reasonably in providing these services without increasing security and protection costs to public entities, and the Legislature aimed to protect Plaintiff through the passage and adoption of the DATAA.

137. Through the breach of the duty it owed under the DATAA, PowerSchool was negligent per se.

138. As a direct and proximate result of Defendant's negligence per se, Plaintiff was injured, including through the loss of time spent attempting to mitigate the victims' harms in resolving fraudulent charges; loss of time and money obtaining and furnishing to victims information about protections against future identity theft; costs of providing or subsidizing credit monitoring and identity theft protection for thousands of individuals; the lost opportunity to take defensive steps like account lockdowns or community notification; and other harm that has resulted from the unauthorized use or threat of unauthorized use of stolen PII, entitling Plaintiff to damages in an amount to be proven at trial.

139. Additionally, as a direct and proximate result of Defendant's negligence per se, Plaintiff has suffered and will suffer the continued risks of exposure to liability for the loss of students' and faculty members' PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant remains in breach of its duty to implement appropriate and adequate measures to protect this PII.

140. Plaintiff's damages and injuries were the natural, probable, and reasonably foreseeable result of Defendant's breach of Defendant's duties. Defendant knew or should have known that it was breaching these duties and that this breach would cause the injuries suffered by Plaintiff as alleged herein.

141. Defendant did not act reasonably under the circumstances in

31

COMPLAINT

breaching the legal duties Defendant owed under Tennessee law.

## COUNT 5

### Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200 et seq.

142.   Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

143.   California's Unfair Competition Law ("UCL"), Business & Professions Code Section 17200 et seq., prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or practice. The UCL provides that a Court may enjoin acts of unfair competition, and order restitution to affected members of the public.

144.   California Business and Professions Code Section 17203 allows a person injured by unfair business acts or practices to prosecute a civil action for violations of the UCL. Plaintiff has lost money or property as a result of Defendant's unfair business practices by virtue of paying for services that do not have the features and qualities that PowerSchool misleadingly represents itself to provide.

145.   Defendant entered into the Contract with Plaintiff to provide a range of products and services designed to help schools, teachers, students, and parents manage various aspects of education. Included among these services was the Student Information Systems ("SIS"). The provision of SIS by necessity included the storage and custody of PII.

146.   PowerSchool's website advertised its products, including SIS, as a solution to protect student information, stating: "PowerSchool invests in updated security technology and adheres to strict security regulations. To keep your data secure." PowerSchool further advertised its platform as secure, claiming itself to be an "industry leader for protected private data." But PowerSchool, by virtue of the business in which it is engaged, knew that PowerSchool woefully failed to adhere to regulations and implement basic security measures in light of the

sensitive nature of the PII Plaintiff paid Defendant to store, secure, and protect. As alleged throughout this Complaint, Defendant failed to implement the bare minimum security measures that are commonly utilized by similarly situated companies. Something as simple as providing for a multi-factor authentication log-in method would have been easily accomplished and would have prevented the Data Breach altogether.

147.    Despite having actual knowledge that its security measures and data protection methods fell well short of what would be expected from an "industry leader for protected private data," PowerSchool continued and continues to peddle these false and misleading claims to induce purchases of its products and services.

148.    Defendant at all relevant times knew its data protection system was and is readily vulnerable to attack and easily defeated. Defendant, however, never disclosed to Plaintiff prior to entering into the Contract that its data protection and security system was vulnerable to attack and could be easily defeated, nor that Defendant's system completely lacked encryption of the PII that Plaintiff entrusted to Defendant.

149.    Defendant's conduct as alleged above has been and will continue to be unlawful in that the conduct constitutes and will continue to constitute a violation of the UCL.

150.    Defendant's conduct as alleged above has been and will continue to be unfair in that the harm to Plaintiff arising from Defendant's conduct outweighs the utility, if any, of the conduct alleged above.

151.    Defendant's conduct as alleged above has been and will continue to be fraudulent and likely to deceive reasonable consumers in that Defendant has willfully misrepresented the nature and quality of its security systems and data protection services, and will continue to misrepresent the nature and quality of its security systems and data protection services. Defendant's continued misrepresentations, combined with the failure to disclose the actual vulnerabilities

of its present system, constitutes deception. Defendant had a duty to avoid misleading consumers, including Plaintiff, yet Defendant continues to make these false claims about its services while also failing to mention the vulnerabilities of its systems in any of the marketing and promotional materials that Defendant disburses prior to contracting with school districts.

152.   The representations about the quality of data security services and the omissions about the lack of encryption, non-use of multi-factor authentication, and other omissions pertaining to the deficiencies of the services Defendant actually provides, are material facts that a reasonable consumer would have considered important in deciding whether or not to enter into a commercial relationship with PowerSchool. This commercial relationship involved monitoring the PII of the substantial number of students, faculty members, and beyond in Plaintiff's district.

153.   The representations Defendant made in the Contract itself were false and resulted in Plaintiff receiving less of a benefit than what was promised in exchange for Plaintiff's payments to Defendant for the rendition of Defendant's services.

154.   As a direct and proximate result of relying upon the false representations of the services Defendant claimed it would provide, Plaintiff:

a.  surrendered more to Defendant than Plaintiff otherwise would have;

b.  acquired less from Defendant than Plaintiff would have if Defendant had fully carried out Defendant's obligations; and

c.  was required to enter into transactions costing money that would otherwise have been unnecessary.

155.   Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition. Injunctive relief is necessary and appropriate to prevent Defendant from repeating and continuing these unlawful, unfair, and fraudulent business acts and business

practices alleged above. If Defendant is not enjoined from this conduct, Defendant will continue to engage in these unlawful practices.

156.  Plaintiff's success in this action will enforce important rights affecting the public interest. Plaintiff accordingly seeks and is entitled to declaratory and injunctive relief, and all other equitable remedies owing to Plaintiff.

157.  Plaintiff herein takes upon itself enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by forcing Plaintiff to pay attorneys' fees from the recovery in this action. Attorneys' fees are appropriate pursuant to California Code of Civil Procedure Section 1021.5 and otherwise.

158.  As a result of Defendant's practices, Plaintiff has suffered and will continue to suffer injury in fact and will have lost money or property, including fees paid out-of-pocket to Defendant under the Contract. As a direct and proximate result of the acts and practices alleged above, pursuant to California Business & Professions Code Section 17203, Plaintiff seeks and is lawfully entitled to:

    a.  preliminary and permanent injunctive relief;

    b.  restitution of all monies paid as a result of Defendant's deceptive and unlawful practices, including but not limited to, the fees paid for data protection and monitoring services in an amount of general damages sufficient to account for the value of the promised data security and protection that Plaintiff did not receive but paid for;

    c.  interest as allowable by law; and

    d.  an award of attorneys' fees and costs and expenses incurred in filing and prosecuting this action, pursuant to, inter alia, California Code of Civil Procedure Section 1021.5.

COMPLAINT

## COUNT 6

### False Advertising in Violation of 15 U.S.C. § 1125(a)

159.   Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

160.   The conduct and acts of Defendant described above constitute a false representation of fact in commercial advertising or promotion, by which Defendant misrepresents the nature, characteristics, and qualities of the services it provides, in violation of 15 U.S.C. § 1125(a).

161.   Defendant's use of misleading words was accomplished over the World Wide Web and was therefore carried out through the channels of interstate commerce.

162.   Defendant's representations regarding the qualities of its services with respect to data protection conveyed a false impression, were misleading in the context of the services Defendant provides, and were likely to deceive consumers.

163.   Plaintiff is informed and believes, and on that basis alleges, that Defendant's wrongful conduct has been and continues to be intentional, willful, and without regard for Plaintiff's rights as a consumer of the products and services provided by Defendant.

164.   Plaintiff is informed and believes, and on that basis alleges, that Defendant has gained profits by virtue of its false representations concerning the nature, qualities, and features of the services it claims to provide.

165.   As a direct and proximate result of the false representations made by Defendant, Defendant has been unjustly enriched. Plaintiff has conferred a benefit on Defendant with the expectation that Defendant was performing under the terms of the Contract, consistent with what Defendant represents in commercial advertisements.

166.   In the Contract itself, Defendant made a contractually binding

COMPLAINT

1   promise to take appropriate steps to secure the PII that Plaintiff entrusted to
2   Defendant.

3        167.  Plaintiff is therefore entitled to general damages in an amount
4   sufficient to restore to Plaintiff the benefit that Plaintiff conferred on Defendant in
5   reasonable and actual reliance on Defendant's false, misleading, and deceptive
6   misrepresentations.

7                                **COUNT 7**
8                          **Express Indemnity**

9        168.  Plaintiff realleges and incorporates the above paragraphs as if fully
10  set forth herein.

11       169.  Plaintiff and Defendant entered into the written Contract under the
12  terms of which Defendant, in consideration of payment by Plaintiff, agreed to
13  provide the services to Plaintiff which included carrying out the necessary
14  measures to secure and protect the PII that Plaintiff entrusted to Defendant. One of
15  the terms of the Contract provides that: "PowerSchool hereby agrees to defend,
16  indemnify, and hold harmless Customer from and against any Liabilities to the
17  extent arising out of or relating to any claim brought by a third party against
18  Customer alleging a confirmed data breach (as defined by the applicable state law)
19  to the extent attributable to PowerSchool resulting from PowerSchool's violation
20  of the data security provisions expressly set forth in this Agreement or the DPA
21  executed between the Parties."

22       170.  Defendant had a duty to exercise due care in the performance of its
23  obligations under the contract. However, Defendant breached this duty. As a
24  proximate result of Defendant's breach, Plaintiff now faces the imminent
25  possibility that Plaintiff will be sued by any of the individuals whose PII was
26  stolen in the Data Breach.

27       171.  Accordingly, Plaintiff seeks declaratory relief from this Court
28  whereby this Court will issue a declaration that, in the event that Plaintiff is sued

as the result of Defendant's failure to adequately secure the PII at issue, Plaintiff will be indemnified in an amount equal to any judgment or settlement of claims that arises out of the Data Breach.

## COUNT 8

### Violations of the Tennessee Consumer Protection Act of 1977

172.   Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

173.   The Tennessee Consumer Protection Act of 1977 ("TCPA") provides that "[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring an action individually to recover actual damages." Tenn. Code Ann. § 47–18–109(a)(1).

174.   Plaintiff is and was at all relevant times herein a "person" and a "consumer" as those terms are defined under Tenn. Code Ann. §§ 47-18-103(6) and (18). Plaintiff was acting in a consumer-oriented fashion when deciding whether to purchase PowerSchool's products and services.

175.   Defendant is and was at all relevant times a "person" as the term is defined under Tenn. Code Ann. § 47-18-103(18). Defendant was a seller engaged in the business of selling goods and services in the State of Tennessee and throughout the United States.

176.   Before entering into the Contract with Plaintiff and throughout the duration of the Parties' commercial relationship, PowerSchool published in promotional, marketing, and advertising materials statements wherein PowerSchool represented that: (i) PowerSchool "invests in updated security technology" and "adheres to strict security regulations" to keep the data containing students', parents', and faculty members' PII secure; (ii) PowerSchool

was an "industry leader" for protected private data; and (iii) members of the public that could "trust" PowerSchool to safeguard and protect the personal information of children and their family members.

177.    The representation that PowerSchool invests in updated security technology and adheres to strict security regulations was untrue, deceptive, and misleading. PowerSchool did not in fact adhere to strict security regulations because such adherence would have included, at a bare minimum, implementing encryption to make the data unreadable without a key, and ensuring that there was a multi-factor authentication method to gain access to the highly sensitive personal information Plaintiff entrusted to PowerSchool.

178.    The representation that PowerSchool was an "industry leader" for protected privacy data was untrue, deceptive, and misleading because it erroneously characterized PowerSchool as a company that not only met industry standards for the protection of PII, but one that went above and beyond these standards with respect to protecting children's private information.

179.    The representation that members of the public could trust PowerSchool when it came to protecting the personal information of children was deceptive and misleading. In fact, PowerSchool failed to implement the most basic measures to ensure that this personal information was protected. At a minimum, these failures included:

    a.  Failure to properly encrypt data;

    b.  Failure to implement multi-factor authentication;

    c.  Failure to monitor for unauthorized access;

    d.  Failure to ensure that its staff was adequately trained to recognize and respond to cyber threats;

    e.  Failure to regularly and proactively patch vulnerabilities that could be exploited by hackers; and

    f.  Failure to properly isolate sensitive student and teacher data from

39

COMPLAINT

1    other less secure systems.

2    180.   As such, the representation that PowerSchool could be trusted to

3    secure data was misleading and deceptive because PowerSchool's security

4    measures fell short of what is customarily considered sufficient in terms of data

5    privacy protection.

6    181.   All of the above alleged assertions, representations, or statements

7    caused Plaintiff to reasonably believe that:

8         a.   PowerSchool was an industry leader in data privacy protection;

9         b.   PowerSchool made investments in updated security technology and

10             adhered to strict security regulations to keep the sensitive data

11             PowerSchool stored secure; and

12        c.   PowerSchool could be trusted with handling, storing, and securing

13             the sensitive personal information of children contained within the

14             data that PowerSchool obtained as the result of PowerSchool's

15             services.

16   182.   All of the above alleged assertions, representations, or statements

17   were likely to mislead a reasonable consumer.

18   183.   All of the above alleged assertions, representations, or statements

19   were made by PowerSchool with the intent that others would rely on them.

20   PowerSchool made these assertions, representations, or statements with the intent

21   to induce purchases of PowerSchool's products and services.

22   184.   By making these false, misleading, and deceptive representations,

23   Defendant engaged in unfair or deceptive acts or practices described in Tenn.

24   Code Ann. § 47-18-104(b)(5), (7), (9), (12), and (21) because Defendant: (i)

25   represented that PowerSchool's goods or services had characteristics and/or

26   benefits that the goods or services did not have; (ii) represented that that

27   PowerSchool's goods or services were of a particular standard, quality, or grade

28   when they were of another; (iii) advertised PowerSchool's goods or services with

40

COMPLAINT

the intent not to sell them as advertised; (iv) represented that a consumer transaction conferred or involved rights, remedies, or obligations which the transaction did not have or involve; and (v) used statements or illustrations in advertisements which created a false impression of the grade, quality, quantity, and/or value of PowerSchool's products and services, or which otherwise misrepresented the goods or services offered by PowerSchool in such a manner that later, on disclosure of the true facts, there is a great likelihood that Plaintiff may have switched from the advertised goods or services to other goods or services offered by competing companies in PowerSchool's line of business.

185.   In addition to these acts or practices, PowerSchool violated the Data Accessibility, Transparency and Accountability Act, as alleged above. Under Tenn. Code Ann. § 49-1-708(g)(1), this violation "constitute[d] an unfair or deceptive act or practice affecting the conduct of trade or commerce under the Tennessee Consumer Protection Act of 1977."

186.   As a direct and proximate result of PowerSchool's use or employment of these unfair and/or deceptive trade acts or practices, Plaintiff suffered an ascertainable loss of money or property.

187.   PowerSchool used and employed these unfair and/or deceptive trade practices in willful and/or knowing violation of the TCPA.

188.   PowerSchool induced school district consumers, including Plaintiff, to enter into transactions with Defendant by taking advantage of school districts' limited financial resources and their need for a comprehensive online system to organize the personal information of students and employees. Defendant at all relevant times knew that Plaintiff relied on Defendant for the protection and security of this private, personal, and highly sensitive data, which predominately contained the PII of children. Therefore, Defendant's unfair and deceptive acts or practices were offensive to public policy, and were immoral, unethical, and oppressive.

COMPLAINT

189.    PowerSchool continuously accepted payments from school district consumers while at all relevant times knowing that Defendant was not providing the services it continuously advertised and represented it was providing. Defendant also knew that school districts, reliant on public funding, reasonably believed that PowerSchool was providing the quality of data protection and security services that Defendant advertised itself to be providing, both before the Contract was made and throughout the course of Defendant's contractual relationship with Plaintiff. Therefore, Defendant's unfair and deceptive acts or practices were coercive and evince a total absence of good faith.

190.    PowerSchool engaged in these unfair and deceptive acts or practices with reckless and wanton disregard of the rights and safety of members of the public. Therefore, any potentially applicable contractual limitation on Plaintiff's damages is null and void.

191.    As a direct and proximate result of Defendant's wrongful conduct in violation of the TCPA, Plaintiff did not receive the benefit of its bargain, or otherwise paid a price premium, for the services that Defendant claimed it would provide and was providing because Plaintiff paid for services that Defendant did not provide and was not providing.

192.    As a result of Defendants' fraudulent and/or deceptive conduct, misrepresentations, and/or knowing omissions, all of which constitute unfair or deceptive acts or practices in violation of the TCPA, Plaintiff is entitled to and seeks  an award of actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial, in addition to all other appropriate equitable relief and any such further relief as the Court may deem just and proper.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant, as follows:

1.    That the Court grant permanent injunctive relief to prohibit

COMPLAINT

PowerSchool from continuing to engage in the unlawful acts, omissions, and practices described herein, including:

    a. Prohibiting PowerSchool from engaging in the wrongful and unlawful acts described herein;

    b. Requiring PowerSchool to protect all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

    c. Requiring PowerSchool to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff's faculty, students, and parents of students;

    d. Requiring PowerSchool to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on PowerSchool's systems on a periodic basis, and ordering PowerSchool to promptly correct any problems or issues detected by such third-party security auditors;

    e. Requiring PowerSchool to engage independent third-party security auditors and internal personnel to run automated security monitoring;

    f. Requiring PowerSchool to audit, test, and train its security personnel regarding any new or modified procedures;

    g. Requiring PowerSchool to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon employees' respective responsibilities with handling Private Information;

    h. Requiring PowerSchool to routinely and continually conduct internal training and education, at least annually, to inform internal security

43

COMPLAINT

personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

i.  Requiring PowerSchool to implement a system of testing to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with PowerSchool's policies, programs and systems for protecting Private Information;

j.  Requiring PowerSchool to implement, maintain, regularly review and revise as necessary, a threat management program designed to appropriately monitor PowerSchool's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

k.  Requiring PowerSchool to meaningfully educate all school districts about the threats faced by victims of the Data Breach as a result of the loss of their Private Information to third parties, as well as the steps affected individuals must take to protect themselves;

l.  Requiring PowerSchool to implement logging and monitoring programs sufficient to track traffic to and from PowerSchool servers; and

m.  Appointing a qualified and independent third-party assessor to conduct for a period of 10 years a SOC 2 Type 2 attestation to evaluate on an annual basis PowerSchool's compliance with the terms of the Court's final judgment, to provide such report to the Court, and to report any deficiencies in compliance with the Court's final judgment;

2.  That the Court award Plaintiff compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

3.  That the Court order disgorgement and restitution of all earnings,

COMPLAINT

profits, compensation, and benefits received, retained, or misused by PowerSchool as a result of its unlawful acts, omissions, and practices;

4.      That the Court award statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law in accordance with the fraudulent representations made by Defendant upon which Plaintiff relied;

5.      That Plaintiff be granted the declaratory relief sought herein;

6.      That the Court award Plaintiff the costs and disbursements of this action, along with reasonable attorneys' fees, costs, and expense;

7.      That the Court award pre-judgment and post-judgment interest at the maximum legal rate; and

8.      That the Court grant all such other relief as it deems just and proper.

## **JURY TRIAL DEMANDED**

Under Federal Rule of Civil Procedure 38, Plaintiff exercises Plaintiff's right under the Seventh Amendment to the United States Constitution and demands a trial by jury.

DATED: May 6, 2025                    **FRANTZ LAW GROUP, APLC**


By: /s/ William B. Shinoff
James P. Frantz (State Bar No. 87492)
William B. Shinoff (State Bar No. 280020)
402 West Broadway, Suite 860
San Diego, CA 92101
Telephone: (619) 233-5945
Fax: (619) 525-7672
E-mail: jpf@frantzlawgroup.com
         wshinoff@frantzlawgroup.com

COMPLAINT